and it's 24-4071. Mr. Black for the appellant. Yes, thank you, your honor, and good morning. Distinguished judges and counsel, may it please the court, my name is Daniel Black, counsel for appellants Agnes Mukantagara and her son Ebenezer Shaka. It is correct that there is part of 8 U.S.C. 1157-C-4 that does grant to the government limited discretionary authority to exercise mercy and not to terminate refugee status of any alien, but only after the government proves that the alien was not in fact a refugee under the meaning of 8 U.S.C. 1101-A-42 at the time of their admission into the United States. That is a legal determination that is not discretionary and that is what plaintiffs are seeking review of in this case under the APA. The type of discretion granted in 1157-C-4 is prosecutorial discretion. The discretion to mercifully not terminate refugee status if they prove that the alien was not in fact a refugee at the time of their entry. Regardless of the order of the language in 1157-C-4, it is grammatically a classic if-then statement. If the attorney general determines the alien was not in fact a refugee within the meaning of section 1101-A-42 of this title at the time of the alien's admission, then the refugee status of that alien may be terminated by the attorney general pursuant to such regulations as the attorney general may prescribe. Is refugee status, isn't that a fact question and how would we be able to review a fact question under the act? It is a mixed question of fact and law. Just like in the case that we cited of Wilkinson, mixed questions of fact and law are questions of law. In that case where the court was determining a legal and factual question of a 42-B application, the Supreme Court found that where it was an application of facts to a legal standard, that that is a question of law that can be reviewed. Here, wasn't there a finding that your client was a persecutor, participated in a genocide? That doesn't seem to have any legal component to me. It seems like a quintessential fact question. Do we have any judicial authority to say, well, even though she's participated in genocide, we don't think refugee status should be withdrawn? The ultimate decision of whether or not to terminate the refugee status is a discretionary decision, but that's not what plaintiffs are challenging here. Plaintiffs are challenging that legal and factual determination of applying the facts to the law and the law is the definition of under 1101A42 of a refugee. There are legal standards within that definition that have to be met with facts in order for that determination of refugee status to be made. What are those legal determinations that we need to apply in this case? That someone is outside of the United States, that they are unable or unwilling to avail themselves of the protection from their country and from persecution based on account of their race, religion, nationality, political opinion, membership in a particular social group. There are legal standards for all of those and there's case law for all of those different protected groups. There is case law for persecution. There is a legal definition of persecution and legal standard to be applied. All of that is actually done for every refugee applicant that applies for refugee status from outside the United States. That is a legal and factual determination that is made prior to an exercise of discretion to allow them to enter. But section 42 says a refugee does not include any person who ordered, incited or assisted in a genocide, to paraphrase it a bit. I don't see what role we would have in reviewing that determination at all. But that is a determination where, I mean, genocide is also a, those are specific legal definitions as well that also can be determined where you're applying the facts to the law of those definitions both within 1101A42 and then throughout the INA where it talks about what those definitions are. Well, just one follow-up and then I'll leave it. But are you challenging the determination that your client was a persecutor? Yes, in addition to the legal determination that the bar would apply and the Constitutional Fifth Amendment arguments that we are challenging for due process as well as the APA challenge that this was an arbitrary and capricious decision by USCIS. The IF Clause in 1157C4 introduces a condition precedent to any exercise of discretion. There is no power by the government to exercise any discretion until the agency proves the legal condition precedent of whether the alien was a refugee at the time of their entry. And again, that determination is not discretionary and is subject to judicial review. There are other examples of courts reviewing the application of facts to the law as part of a necessary legal determination. I've already talked about Wilkinson. Another from this court is Sabido Valdivia v. Gonzalez where this court found that the 10-year physical presence requirement on a 42B cancellation of removal application was not a discretionary question. On its face, that sounds like it's just a pure factual question, but it is not according to this court and is subject to review even though the ultimate grant or denial of a 42B cancellation of removal application is completely discretionary and is up to the discretion of the immigration judge. But when there are aspects of that application that are the application of facts to the law, it is not a discretionary question and it can be subject to judicial review. What do we do with the subsequent decisions from the immigration judge and then by the BIA that determined that the mother was credible and not a persecutor? Your Honor, that is for the district court to consider in the factual and legal analysis. But the plaintiffs here are actually not challenging anything that happened in removal proceedings or a final order of removal. And this court two years ago already decided that, quote, plaintiffs do not challenge their removal proceedings. Rather, they challenge USCIS's determination to terminate refugee status. The legal, the step one, as you call it, on whether she is a refugee is inextricably intertwined with whether she is a persecutor, isn't it? Those are two separate questions, yes, within finding if they qualify for the definition of refugee. Yeah. So, I mean, so when we have first the finding that she is a persecutor and then we've got these subsequent findings that she's not. And do we yet have a decision? Because there was an appeal. The government appealed the BIA, the last decision. I guess they remanded the IJ, ruled twice and it's up against with the BIA. Now, do we have a decision? No, it is still pending before the BIA. And the son's case is still pending, is actually on abatement before this court, pending the decision by the BIA, but also pending these proceedings. But regardless of whether or not the BIA upholds the immigration judge's decision or denies, and that goes up to, comes up to this court on a PFR, the determination by USCIS will never be part of that case. And that's because the immigration judge decided under BIA precedent that they have, he has no jurisdiction to review USCIS's termination decision. And that was this court's decision as well, two years ago in this case, that the, this decision by USCIS forms no part of a removal order and forms no part of removal proceedings. The government continues to assert without providing any legal roadmap for how this would be possible, that somehow this can become part of the final order of removal and considered by this court in a PFR, but that disregards the statutory limitation in section 1252B4A, which limits this court's quote, decide the petition only on the administrative record on which the order of removal is based. If there's still proceedings pending in the BIA, why do we have a final agency order that we can even review? This court already said that that decision is final because it forms no part of removal proceedings and is not, was not considered by the immigration judge. And so they're completely separate and is a final order because it, I mean, it is a final agency decision because it was a consummation of the process by USCIS from which legal consequences flow. And there was no adequate remedy in any other court. And that was a finding. That was what was argued previously. And this court already decided that because plaintiffs are not challenging anything in removal proceedings, nothing that they are seeking judicial review on through the APA in this case can be part of the PFR. And so whatever happens with the, with the pending case at the BIA or with the son's case in, before this court, those are separate from this judicial review of this decision, which forms no part of removal proceedings. And so your honors, we're asking the court to allow us to hold the government accountable. This is about accountability. If the government adopts what the government, I mean, if this court adopts the government's position, then there would be no judicial review of their decision anywhere. The only location where there can be judicial review of USCIS final agency action is through APA in the district court. It forms no part of removal proceedings and would not be considered on a PFR. So if the district court found arbitrary increases, what happens next? The district court can restore or order the USCIS to restore their refugee status. And then my clients would be able to still under the child status protection act, protect the son from deportation. He is currently exposed and has a final order of removal to Rwanda because simply because he aged out, but he aged out because of that arbitrary and capricious decision. And by fixing that, he will no longer be subject to a final order of removal simply because of the passage of time. I understand how he can be harmed. Is that what this is all about? Does it really affect the mother so much? What happens here today? It affects the mother's ability to protect her son. It affects the mother's ability to use her status as a Congress intended under the child status protection act to protect her son from deportation, which is how he came into the United States. And she would like him to stay here as well. I'd like to reserve the rest of my time. Before you say that, just so I'm clear, if we with you and find that it's reviewable and we remand back to the district court, what's your argument in the district court? This was an arbitrary and capricious decision that they did violate due process because my clients were not provided the evidence that the government relied upon. And the government knew that that evidence was suspect because of the nature from where it came. And because of the history of the Rwandan government providing that kind of evidence for political persecution. And that all of that needs to be reconsidered and be reviewed by a judge. I'll give you a little bit of rebuttal time. Thank you. All right. Let's hear from the Ms. Ahmed. Good morning. It may please the court, Anisa Ahmed, on behalf of the federal government. Your honors, this court should affirm the district court's dismissal of appellant's complaint for three reasons. First, under 8 U.S.C. 1157C4, USCIS has such broad discretion to terminate refugee status that such a termination is shielded from judicial review by section 1252 A2B2. Second, neither the APA nor the INA requires judicial review and the Heckler v. Cheney standard does not determine whether 1252 A2B2 precludes review of discretionary decisions. And finally, there is no separation of powers issue here because the statutory text is unambiguous and appellants can obtain the review that they seek through a petition for review of PFR pursuant to 1252 A2D. For these reasons, we ask the court affirm the district court's dismissal and I welcome the court's questions. Well, let's start with the last one first. You can't get review through the PFR, can you? You can get review through the PFR. So, you won't have the record, right? I mean, they're separate cases, right? So, appellants can't. How are they going to get the review that they claim they're entitled to just through the PFR in a removal proceeding? There are two ways. First, just through simple supplementation of the record. Appellants can file motions pursuant to the federal rules of appellate procedure. This court's local rules are federal rule of evidence 201 seeking judicial notice of certain documents in administrative proceedings. So, they can supplement the record that way. But another way that they could supplement the record and lodge their challenge to the actual to the original termination decision is by challenging the regulation 8 CFR 207.9 itself. And so, while the IJ can itself review the termination decision, this court can review any constitutional law issues, including questions of mixed law and fact under 1252 A2D. And, Your Honor, Timkovich asked at the end of your colloquy with Mr. Black that what the arguments, what appellant's arguments are would be upon remand. And Mr. Black argued that they would be, that they would argue that they weren't given the evidence and that amounts to a due process violation. That's a constitutional claim that can be reviewed under 1252 A2D by way of a PFR. In reviewing the petition, the PFR, could this court reach a different determination on the issue of persecutor? It could, certainly, because you'd be looking at the merits of that decision. If you look, if you found that 8 CFR 207.9 was a violation of appellant's due process rights, which we don't, we wouldn't, we're not conceding it does, but if you were to find that, you could reach that original decision. The trouble with that... Not the constitutional argument, what about just whether under the definition of refugee, the decision was correct that she was not a refugee? Yes, you could, because that would be a question of mixed law, in fact, which Wilkinson allows under 1252 A2G. So you could reach that determination. The only problem there would be if this court were to reach that determination that is contrary to the determination that the the government previously lodged, which a panel from this court disagreed with, but just to mention it for the, for it to be, you know, for fulsome information. I think a discussion of Patel and Buarqua, the Supreme Court's recent decisions on 1252 A2B would be helpful here to discuss whether or not threshold eligibility determinations are covered under 1252 B, and they are. The framework to determine whether or not any intermediary decisions are covered is to look to see whether the ultimate decision is discretionary. If Congress has conferred discretion onto the agency, as it has here in 1252, or I'm sorry, in 1157 C4, by saying that USCIS may terminate if it finds that a non-citizen didn't meet the refugee definition upon admission, that is, that is discretion, and any intermediary decisions flowing up to that decision are precluded from review as well, and that is Patel. And of course, Patel only dealt with 1252 A2B1, but following Kukana's instruction to read both of those provisions, B1 and B2, harmoniously, we can bind that, and including the broader language in B2, which starts with any other action or decision, which is broader than judgment, we can find that any intermediary decision that is covered by B2. Well, the statute actually ties the definition of refugee to another statute that has a statutory definition of refugee with the persecutor exception to that definition. I mean, doesn't that indicate some congressional intent that this is not just freewheeling discretion, instead that they're limited to the first determination of whether or not the mother here was a refugee is cabined by specific congressional definition of a refugee? So I'll disagree a little bit with that proffer. First, we would concede, of course, there is a definition, and USCIS, in terminating refugee status, must, of course, find that the non-citizen did not meet the definition of refugee when he or she was admitted. So certainly, yes. However, that Congress has provided definitions throughout the Immigration and Nationality Act does not mean that there is no review ever, because Congress, in writing these definitions, also, in the same act, created jurisdiction stripping provisions. And so by plaintiff's proffer, any time Congress wrote any definition, that would essentially eviscerate any jurisdiction stripping provision. And that simply cannot be, and that's not just in the immigration context, but broadly. And so that there is a definition does not mean that there is still judicial review. And again, that would be an intermediate decision and determination or action that is then subsumed in the ultimate discretionary decision for which judicial review is precluded by 1252A2B2. And if I understood what you just said, that it would invalidate the jurisdiction stripping provisions if we were to say the reference to a specific statutory definition meant that you don't have full discretion on the determination of whether she was a refugee. I mean, there's other statutes where there's no reference to a particular statute. I see those as you've got your jurisdiction stripping provisions are still in effect. So I guess I'm not buying your argument that it would completely eviscerate the jurisdiction stripping provisions if we were to say when Congress ties it to a specific statutory definition, it is an intent to cabin discretion to that legal definition and we can review. Again, I would disagree because just because it completely strips, it takes the jurisdiction stripping provisions and essentially invalidates them. I would say certainly in this case, yes, because if we're going to say that there is a definition that exists for a refugee and that any termination decision that USCIS makes that is wholly discretionary, because again, USCIS does not need to terminate if it finds that a non-citizen didn't meet the refugee definition. It is the quintessential discretionary, the two-way street that Puarfa talks about. But if they do not, they don't have to, right? But if they do meet the definition of refugee, they have no discretion to determine that they have to be removed, right? Certainly, and that would be a question of mixed law in fact that can be reviewed, just not here, but through an appeal for the district court's decision. It would have to be through a PFR under 1252 A2D. So eventually, that mixed question of law in fact can be reviewed. We have a final agency action as I was discussing with Mr. Black. What's your position on that? That there is no final agency action here. I know that in Bennett v. Speer, the Supreme Court there said that the issue was the agency and only used the singular term. But here, the question is whether or not there's been a final determination made on Ms. McOntegara and Mr. Sciocca's immigration status. And here, that's not the case, at least for Ms. McOntegara. There is no final decision by the adjudicators that would ultimately decide her immigration status. Currently, there is a pending appeal before the BIA. The BIA can affirm, could deny, and if it denies or returns the IJ, then Ms. McOntegara can file a PFR. And in that case, there is a potential that this court will have three different cases pertaining to the same issues, Mr. Sciocca's PFR, Ms. McOntegara's PFR, and this appeal. And so there is no final agency action here because there's no finality as to her immigration status. And so we would argue that there's no APA record review here. But what about with regard to Mr. Shakira? Is there a final agency action with respect to him? I mean, he's been ordered removed, right? He has been ordered removed, but we would say also pending the outcome of this litigation that there is no final agency actually. No, I think you are correct that there is a final agency action as to him. And so can I ask you a question about the two staff that Mr. Black's talking about with 1157C4, the first being the preliminary findings required, and then the second being the grace, the discretion. And I want to ask you about this case, which my law clerk dug up. I did not. You may have heard of it. You may not. It's not cited. It's from the 11th Circuit. It's Mejia Rodriguez. Are you familiar with that? I am not, Your Honor. All right. Well, let me tell you a little bit about it. It concerns temporary protected status. And that's exactly what the 11th Circuit does, is the two-step. And the significance of it being an 11th Circuit case is that both of the Supreme Court cases you've referenced are out of the 11th Circuit. And it's a 2009 case that even after those two cases, my understanding is the 11th Circuit still considers that case active and valid, which would suggest to me at least that those two cases did not undo what Mr. Black is trying to achieve here, and that the two statutes, the 1157C4 and the temporary protected status statute are similar. And so why wouldn't we rely on that? That's my question. But I realize I'm just kind of popping it out of the dark there, asking about a case you don't know. Sure. And initially, if Your Honor were to rely on that in your decision-making, the government would ask we provide supplemental briefing to discuss this case, just because I'm not aware of it, and we didn't cite it in the briefing. But I will say temporary protected status is distinct from, without having the statute in front of me, I believe is distinct from the issues from 1157C4. But that's all I can really speak to that. I would still say that in this case, what we're looking at here is just the statute on its face, 1157C4, which says that USCIS may terminate, which allows broad discretion. And it is actually the same language that the Supreme Court and BOARFA found to be broad discretion, such that decisions made pursuant to the provision that was at issue in that case, which was 1155, are precluded from judicial review. So again, without having... But BOARFA, the Supreme Court specifically left open the question of whether a threshold requirement could be reviewed, right? So I don't know that that... I wish it helped us, but I'm not sure it does, to answer the question here. Sure. It was assumed without the cited in that case, and Justice Jackson explicitly said so. However, I'd say reading Patel and BOARFA and Kucana, which are our key cases on 1252A2B together, and again, following Kucana's direction to read 1252A2B1 and 2 harmoniously, does help us here. Because 1252A2B1, according to Patel, encompasses all intermediary mandatory and non-discretionary and discretionary decisions that ultimately lead to the discretionary decision at issue. And again, looking at the language of 1252A2B2, which has any other action or decision, means that whatever is covered by 1252A2B1 has to be covered by 1252A2B2. And the Fifth Circuit recently held just last year that very proposition. And what case is that? That is Chatterjee v. Lincoln. The case citation is 106, 4th edition of the Federal Reporter, page 388, Fifth Circuit, 2024. And specifically, it said that the use of the word action in B2 would be superfluous if the provision only stripped jurisdiction to review only final discrete decisions. Your Honors, I see that my time is coming to an end. If I may briefly conclude if there are no further questions. You may. Thank you. For the reasons discussed today and the reasons discussed in the briefing, we respectfully request that the Court affirm the District Court's dismissal. Thank you for your time. Thank you, Counsel. And Robert, could you give 90 seconds for Mr. Black? Thank you so much, Your Honors. I would like to let the Courts know to address opposing Counsel's suggestion that we could simply supplement the record. We did file a motion to supplement the record in Ebenezer Shaka's PFR case that is currently pending before this Court. And the government opposed that. And it was denied as part of the abatement of that case. And so, I don't see any legal way that it can be accomplished what the government is suggesting. I would like to also just address Patel quickly. Patel, 1255, the statute that they were considering there, is clearly discretionary, but also is listed as under 1252A2B1, one of the types of cases that is precluded from judicial review. And so, it is distinguishable from this case. Notably, refugee status is not listed anywhere in that list of cases that are for preclusion of judicial review because refugee status cannot be sought in removal proceedings. It can only be applied for outside the United States. And an immigration judge cannot grant refugee status, cannot consider an application for refugee status. 1252 does not apply in this case to a decision made by an agency completely and wholly outside of removal proceedings. And so, I would ask this Court to find that the district court erred in finding that this was a wholly discretionary decision. And we ask this panel to remand the case back to the district court for further proceedings under the APA. Thank you so much. Counsel, we appreciate both of your arguments. You're excused and the case is submitted.